# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| SHEILA A. SUMMERHILL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:20-05055-CV-RK |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner of Social Security Administration's ("SSA") denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **AFFIRMED**.[1]

## Standard of Review

The Court's review of the ALJ's decision to deny disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). The Court does not "re-weigh the evidence presented to the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d

---

[1] On review of the record, Defendant's position is found to be persuasive. Portions of Defendant's brief are adopted without further citation.

549, 555 (8th Cir. 2003)). The Court must "defer heavily to the findings and conclusions of the [ALJ]." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

## Discussion

By way of overview, the ALJ found the following severe impairments: fibromyalgia; degenerative joint disease of the right knee; degenerative disc disease of the cervical and thoracic spines; obesity; and bipolar disorder. The ALJ also determined that Plaintiff has the following non-severe impairments: left shoulder strain; carpal tunnel syndrome; seasonal allergies; and gastroesophageal reflux disease (GERD). However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, App. 1 ("Listing"). Additionally, the ALJ found that despite her limitations, Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b) with the following additional limitations: she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can occasionally stoop, kneel, crouch, and crawl. She needs to avoid concentrated exposure to vibrations, pulmonary irritants (such as noxious odors, dust, gas, and fumes) and hazards (such as unprotected heights and dangerous moving machinery). Further she can perform simple, routine, repetitive-type tasks requiring only simple work-related decision-making in an environment with limited social settings not requiring frequent public interaction, with little need for direct supervision; she can adapt to a non-complex work environment. The ALJ found that considering Plaintiff's age, education, work experience, and RFC, Plaintiff can perform jobs that exist in significant numbers in the national economy. Notably, the ALJ additionally determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "are widely inconsistent with the medical evidence and other evidence in the record[.]" (Tr. 19.)

On appeal, Plaintiff challenges:

(1) the ALJ's alleged failure to consider Plaintiff's work-related abilities on a function-by-function basis in determining her RFC, and
(2) whether substantial evidence supports the ALJ's determinations as to
    a. Plaintiff's physical functioning,
    b. Plaintiff's mental functioning, and
    c. The existence of other work in significant numbers that Plaintiff could still perform.

I.  **Function-by-Function Assessment**

Plaintiff first argues the ALJ failed to assess her RFC on a function-by-function basis, erroneously assessed the exertional level first, and failed to consider and address Plaintiff's actual ability to sit, walk, and stand. SSR 96-8P states that the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" and "[o]nly after that may RFC be expressed" by exertional level of work. *See also* 20 C.F.R. § 404.1545(b) (instructing that the RFC should identify limitations on a function-by-function basis). Sitting, standing, walking, pushing, and pulling are all listed in the regulations as physical work-related abilities. *Id.* However, the fact that the ALJ omitted a discussion of functional abilities does not mean she did not consider them. *See, e.g., Beagley v. Berryhill*, No. 5:17-06079-CV-RK, 2018 WL 4565461, at *3 (W.D. Mo. Sept. 24, 2018). "[A]n ALJ who specifically addresses the areas in which [s]he found a limitation and is silent as to those areas in which no limitation is found is believed to have implicitly found no limitation in the latter." *Brown v. Astrue*, No. 4:09-CV-274–DJS, 2010 WL 889835, at *25 (E.D. Mo. Mar. 8, 2010); *see Depover v. Barhnart*, 349 F.3d 563, 567-68 (8th Cir. 2003) (holding that the fact that the ALJ made explicit findings only as to functions for which he found a limit suggested he implicitly found no limits as to other functions).

Here, the ALJ limited Plaintiff to light work. (Tr. 17.) The ALJ noted he was relying on the definition of "light work" as contained in 20 C.F.R. § 404.1567(b), which provides as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

From this, Plaintiff argues that it is impossible to determine how the ALJ assessed her actual ability to sit, stand, and walk. The cases Plaintiff cites are distinguishable. *Hayes v. Astrue*, No. 2:11-CV-04132-NKL, 2012 WL 393406, at *5 (W.D. Mo. Feb. 6, 2012); *Brown,*, No. 4:09CV274-DJS, 2010 WL 889835, at *25; *Proffitt v. Astrue*, No. CIV. 08-5024, 2009 WL 315690, at *3 (W.D. Ark. Feb. 6, 2009); *Schuler v. Astrue*, No. 07-3360-CV-S-JCE-SSA, 2009 WL 613556, at *5 (W.D. Mo. Mar. 9, 2009). In *Hayes,* the ALJ made no explicit findings about

3

the claimant's functional limits. In *Brown*, *Profitt*, and *Schuler*, the objective medical evidence in the record revealed apparent functional limits that the ALJs did not consider. Here, the ALJ identified various functional limits specific to Plaintiff that are consistent with an ability to do "light work." *Thornsberry v. Comm'r, Soc. Sec. Admin.*, No. 4:17-00531-CV-RK, 2018 WL 6716698, at *2 (W.D. Mo. Dec. 21, 2018).

The ALJ specifically notes that while Plaintiff's imaging studies show abnormalities, most are characterized as "mild, minimal, or small, or, rarely, moderate." He notes, aside from findings of tenderness, physical exams also suggest mostly intact functioning, and notes an exam in October of 2017 finding Plaintiff's knees grossly normal and an exam in April 2018 finding her gait normal. The ALJ compares Plaintiff's report of significantly reduced activities on her Function Report, including needing help with standing activities and spending most her time in bed, with the substantial evidence on the record including mostly normal and minimal imaging and physical exam findings and conservative treatment, and concludes such substantial evidence to be more probative. (Tr. 20.) From the ALJ's explicit findings, the Court can infer that he implicitly found no limits as to other functions. Accordingly, substantial evidence supports the RFC.

## II. Physical Functioning

Plaintiff next argues the ALJ's physical RFC is unsupported by substantial evidence. However, once again, the Court finds that the RFC is supported by the record and there is no legal error.

Because Plaintiff applied for benefits on or after March 27, 2017, the ALJ applied the new set of regulations for evaluating the opinions of Dr. Johnson, a non-examining state agency medical consultant. The revised regulations redefine how evidence is categorized, including "medical opinion" and "prior administrative findings," and how an ALJ will consider these categories of evidence in making the RFC determination. See 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), & 416.920c.

Dr. Johnson reviewed Plaintiff's records in May of 2018 and opined that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms were not substantiated by the objective medical evidence alone. (Tr. 102.) He opined that considering Plaintiff's activities of daily living, precipitating and aggravating factors, medication and other treatment, and statements Plaintiff made to medical sources, Plaintiff's statements regarding her symptoms were partially consistent with the total medical and non-medical evidence in the file.

(*Id.*)  Dr. Johnson opined that Plaintiff had exertional limitations, and could only occasionally lift and/or carry 50 pounds, climb ladders, ropes, and scaffolds, balance, kneel, crouch, and crawl. (Tr. 103-104.)  He said Plaintiff could frequently lift and/or carry 20 pounds, climb ramps/stairs, and stoop; stand and/or walk about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; and push and/or pull without limitation.[2]  (*Id.*) He added that Plaintiff should avoid concentrated exposure to vibration, fumes, odors, dusts, gases, poor ventilation, etc., and hazards. (Tr. 104.)

The ALJ considered Dr. Johnson's opinion and found it to be only partially persuasive.  The ALJ was not persuaded by Dr. Johnson's opinion that Plaintiff could perform medium exertional work because the evidence suggested a greater limitation to light work.  The ALJ credited Dr. Johnson's opinion insofar as his findings demonstrated the wide gulf between Plaintiff's alleged symptoms and the record as a whole and because the ALJ found Dr. Johnson's analysis was reasonable.

Plaintiff asserts that Dr. Johnson's opinions are not substantial evidence because he did not examine or treat Plaintiff and because his opinions were issued May 30, 2018, more than a year prior to the ALJ's decision.  Additionally, Plaintiff asserts Dr. Johnson's opinions were issued without the benefit of review of many of the medical records, and based solely on Plaintiff's mild degenerative disc disease and asthma, without accounting for Plaintiff's additional severe impairments and related limitations.  Plaintiff's assertion is "contrary to agency regulations and policy" that guides and governs the ALJ's decision.  *Starbuck v. Kijakazi*, No. 62003221CVSMDHSSA, 2021 WL 3892750, at *5 (W.D. Mo. Aug. 31, 2021).  The ALJ's task was to evaluate the persuasive value of Dr. Johnson's opinion based on the record as a whole, and that is precisely what the ALJ did here.  While Dr. Johnson may not have seen the entire record given the date of his opinion, the ALJ did see the whole record and was able to assess whether Dr. Johnson's opinions were supported by and consistent with the record.  "[U]nder the regulations, the ALJ was required to evaluate this opinion.  The new regulations require the ALJ to consider the opinions of state agency medical consultants because they are highly qualified and experts in Social Security disability evaluation."  *Id.* (citing 20 C.F.R. § 416.913a).  "The ALJ's reasonable

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567.

5

reliance on an opinion from a highly qualified expert is within the zone of choice." *Id.* (citation and internal quotation marks omitted).

Plaintiff also argues that because no opinions given any weight by the ALJ addressed Plaintiff's obesity, the ALJ's statement that he considered obesity is insufficient, and he erred in failing to provide a reviewable explanation as to how he reached any conclusions regarding the impact of obesity on Plaintiff's functional limitations.

Plaintiff appears to argue that because the ALJ did not fully credit any one medical opinion as to Plaintiff's physical symptoms and limitations, the physical restrictions in the RFC could not have been supported by substantial evidence without additional development in the record. (Tr. 22-23.) However, the record contained the opinion of a state agency medical consultant as to Plaintiff's limitations to which the ALJ afforded some weight in formulating a more restrictive RFC. The ALJ also cited substantial medical evidence (Tr. 19-23). *See Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) ("substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion"); *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (in the absence of medical opinion evidence, medical records can provide affirmative medical evidence supporting an RFC; with a medical record adequately developed, an ALJ need not seek additional information or order a consultative examination).

Plaintiff also appears to argue the RFC is flawed because the ALJ acknowledged Plaintiff to have the severe impairments of obesity, fibromyalgia, and knee impairments, but did not include any limitations related thereto in the RFC. An ALJ is not required to list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Here, the ALJ was clear as to which of Plaintiff's alleged physical limitations he found supported by the record and which he did not. *Id.* Specifically, the decision indicates the ALJ considered that Plaintiff's knee impairments did not meet a listing-level severity, finding no objective evidence of an inability to ambulate effectively or an inability to perform fine and gross movements effectively. (Tr. 15.) The ALJ additionally noted that the bone island in her right knee was "small" and the joint fluid was "mild" without popliteal cyst in September of 2017; a follow up x-ray of her right knee in June 2019 was normal with "no significant degenerative changes;" an exam of her knees was "grossly normal" in October of 2017; and her gait was noted to be normal in April of 2018. (Tr. 20.) Additionally, as to fibromyalgia, the ALJ found no evidence suggested that Plaintiff's fibromyalgia, alone or in combination with other impairments, might medically equal any listing.

(Tr. 15.) The ALJ noted the record contained evidence suggesting Plaintiff would have limitations related to fibromyalgia, but that given her musculoskeletal impairments, it was difficult to distinguish whether physical exam findings of tenderness were a manifestation of those impairments or of fibromyalgia. (Tr. 19.) Ultimately, the ALJ expressed that he considered her symptom complaints in their entirety and as they relate to her combination of impairments. (*Id.*) The ALJ also considered Plaintiff's obesity, finding it to be severe, but also concluding that the signs, symptoms, and laboratory findings of her obesity were not of such a severity as found in any listing. (Tr. 15.) The ALJ acknowledged that the effects of obesity combined with other impairments may be greater than expected in the absence of obesity, and that Plaintiff's other impairments were likely worsened by her obesity, demonstrating that he took these considerations into account in determining Plaintiff's RFC. (Tr. 19-20.) These findings were incorporated in the RFC, and once again, "the totality of [his] analysis makes clear [the ALJ] followed the evidentiary pathway set forth in SSR 96-8p." *Wilfong v. Berryhill*, No. 4:17-cv-2747-SNLJ, 2018 WL 4489453, at *4 (Sept. 19, 2018).

This argument is without merit.

## III. Mental Functioning

Plaintiff next argues that the ALJ's RFC as to Plaintiff's mental functional limitations is unsupported by substantial evidence. The ALJ is responsible for determining a claimant's RFC, which is defined as what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a) & 416.945(a). The RFC assessment is based on all relevant evidence, including "the claimant's own descriptions of his or her limitations." *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). However, it is primarily a medical question. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Ultimately, it is the claimant's burden to establish his or her RFC. *See Eichelberger v. Barnhart*, 390 F.3d 584, 591-92 (8th Cir. 2004); *Masterson*, 363 F.3d at 737. Plaintiff contends the ALJ's mental functional limitations determination is unsupported because, while the ALJ found the findings of Gretchen Brandhorst. PsyD, the state agency psychological consultant, to be persuasive, he did not address and did not include any limitation on Plaintiff's ability to carry out detailed instructions.[3] Plaintiff also takes issue with the finding that "severe"

---

[3] Plaintiff argues alternatively that Dr. Brandhorst's opinion is not substantial evidence for the same reasons she argued as to Dr. Johnson discussed above, which the Court found unavailing. Likewise, the Court finds this argument unavailing as to Dr. Brandhorst.

mental impairments resulted in moderate limitations in concentration, persistence, or pace, did not result in the inclusion of any limitations such as production rate, pace, or quota work in the RFC.

The ALJ explicitly acknowledged precisely these "minor differences" between his functional limitations and those found in Dr. Brandhorst's findings. The ALJ explained he was "persuaded by the overarching idea put forward by Dr. Brandhorst, which is that, despite the claimant's mental impairments, she could nevertheless perform a simple work with limited interaction" because this idea was "consistent with substantial evidence." (Tr. 22.) The ALJ then noted the substantial evidence that influenced his determination, including mostly normal mental status exam findings, sparse and conservative psychological treatment, activities of daily living that imply relatively intact mental functioning, and Plaintiff's testimony that she was able to interact with customers as a cashier with little difficulty. (*Id.*)

An ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). Instead, an ALJ may properly develop an RFC based on all of the evidence. *Lockwood v. Colvin*, 627 F. App'x 575, 576 (8th Cir. 2015). "SSR 96-8p requires only that the evidence, both medical and non-medical, be discussed in a way that would support each conclusion, not that each conclusion must be individually discussed and independently supported." *Wilfong*, 2018 WL 4489453, at *4. Here, the ALJ may not have "linked [his] analysis to each particular RFC limitation, but the totality of [his] analysis makes clear [he] followed the evidentiary pathway set forth in SSR 96-8p." *Id.* at *4.

This argument is without merit.

### IV. Step 5 Determination

Finally, Plaintiff argues that, at Step 5 of the evaluation process, testimony from a Vocational Expert (VE) did not constitute substantial evidence to support a finding of no disability. If a claimant establishes that he cannot perform his past relevant work, the burden of production shifts to the SSA to prove that the claimant retains the RFC to perform other jobs that exist in substantial numbers in the national economy. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). The burden of persuasion to prove the RFC and to establish disability, however, remains on the claimant even when the burden of production shifts to the SSA at step five. *Id.*

Here, the VE testified that an individual with Plaintiff's vocational profile and RFC could perform unskilled light work existing in significant numbers in the national economy such as

8

housekeeping/cleaner (440,000 jobs nationally), stock clerk/retail trade marker (247,000 jobs nationally), and mail clerk (non-postal) (56,000 jobs nationally). (Tr. 64.) Plaintiff argues the VE's expert testimony concerning the housekeeping/cleaner job and the stock clerk/retail trade marker job impermissibly conflicts with the information contained in the DOT and its companion publication. However, the VE specifically testified that her testimony was consistent with the DOT and its companion publication. The ALJ limited Plaintiff to simple, routine, repetitive-type tasks with only simple work-related decision-making in an environment with *limited* social settings not requiring *frequent* public interaction and with *little* need for direct supervision in a non-complex work environment. (Tr. 17-18.)

Plaintiff argues the requirement of the job housekeeping/cleaner to have the ability to work under specific instructions and the requirement of the job of stock clerk/trade marker to notify supervisor of discrepancies are obvious conflicts with the Plaintiff's limitation on direct supervision. The Court disagrees and finds that requiring an unspecified amount of work under specific instructions and notification of discrepancies to a supervisor with unspecified frequency does not conflict with limitation to work with "little" need for direct supervision. Plaintiff argues the requirement of the housekeeping/cleaner job of checking wraps and rendering personal assistance to patrons is an obvious conflict with the Plaintiff's limitation on public interaction. The Court disagrees and finds that requiring an unspecified amount of public interaction in the forms listed does not conflict with limitation on "frequent" public interaction. There was no obvious conflict the ALJ was required to resolve.

Even assuming the VE made a mistake in identifying some jobs, an ALJ's decision will still be supported by substantial evidence if a claimant can still perform a significant number of the other jobs the expert identified. *See Grable*, 770 F.3d at 1202; *Burks v. Colvin*, No. 414CV01121DGKSSA, 2016 WL 316869, at *5 (W.D. Mo. Jan. 26, 2016). Plaintiff does not convincingly argue there was any conflict between her RFC and the other jobs identified at the hearing. Those jobs constituted a significant number of jobs Plaintiff could perform, and there is substantial evidence supporting the ALJ's step-five finding. *See Milam v. Colvin*, 794 F.3d 978, 985-86 (8th Cir. 2015); *see also Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (holding 500 jobs in Missouri was significant); *Kelly v. Colvin*, No. 4:13-CV-1891-CDP, 2015 WL 94252, at *5 (E.D. Mo. Jan. 7, 2015) (finding two job titles amounting to over 500 jobs in Missouri to be significant); 20 C.F.R. § 404.1566.

**Conclusion**

Having carefully reviewed the record before the Court and the parties' submissions on appeal, the Court concludes that substantial evidence on the record as a whole supports the ALJ's decision.

IT IS THEREFORE ORDERED that the decision of the ALJ is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED:  September 27, 2021